UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOGGETT COMPANY, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-16-2673 |
| | § | |
| THERMO KING CORPORATION, | § | |
| *Defendant*. | § | |

## SUMMARY JUDGMENT OPINION AND ORDER

This dispute is before the court on cross motions for summary judgment (Dkt. 50, 66).[1] Having considered the parties' submissions, argument of counsel at a hearing on June 29, 2017 and the law, defendant's motion is granted and plaintiff's motion is denied.[2]

**Introduction**

Defendant Thermo King manufactures transport temperature control products and sells them through a network of dealerships. Thermo King has the right under its dealership contracts to approve or deny any proposed sale of the dealerships. In 2016, Thermo King refused to approve a proposed acquisition by plaintiff Doggett Company, LLC of two Thermo King dealerships operated by Kirby Corporation in Texas.[3] According to Thermo

---

1   Doggett's motion to continue consideration of the pending motion until the conclusion of discovery (Dkt. 67) is denied as moot. The discovery period ended June 16, 2017, and the parties have had sufficient time to supplement the record with additional evidence. *See* Dkt. 76, 87, 96.

2   The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including final judgment. Dkt. 29.

3   Kirby is not a party to this litigation.

King, Doggett would not have been a suitable dealer due to its existing business relationship with a Freightliner truck dealership.[4]

Doggett claims that Thermo King's refusal to approve the sale violates Texas law, primarily the Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act (the "Dealership Act"), which limits a supplier's discretion to veto such a sale. *See* TEX. BUS. & COMM. CODE ANN. § 57.102(d). Doggett also brings related claims for declaratory judgment, tortious interference, and injunctive relief, all of which hinge on the alleged Dealership Act violation, and a claim for state law antitrust violations.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

A summary judgment movant who bears the burden of proof on a claim must establish each element of the claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant meets this burden, "the nonmovant must go beyond the

---

[4] Thermo King refers to this as its "original equipment manufacturer" or OEM policy.

pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

**Factual Background**[5]

In early 2016, Doggett approached Kirby about purchasing its two Texas Thermo King dealerships (the "Kirby Dealerships").[6] On April 13, 2016, Kirby Corporation, the parent company that owns the Kirby Dealerships, signed a non-binding letter of intent providing for exclusive negotiations with Doggett.[7] The letter of intent recognized that any transaction would have to be memorialized by a definitive agreement and then approved by Thermo King. Shortly after signing the letter of intent, Doggett sent Kirby a draft Asset Purchase Agreement, but never received written comments back from Kirby and an Asset Purchase Agreement was never signed.[8]

---

[5] The following facts are undisputed, unless otherwise indicated.

[6] D.Ex. A at 67-68, 73-74.

[7] D.Ex. G.

[8] D.Ex. A at 132-133, 135.

On May 11, 2016, Jason Robison, the Kirby Vice President in charge of dealership operations, sent an email to Dane Tiaval, a Vice President of Thermo King, advising that Kirby had been approached by a "potential buyer" and asking to set up a meeting to discuss "the potential impact on the business."[9] Shortly thereafter, Robison informed Tiaval in a phone call that there were concerns regarding Doggett's affiliation with Freightliner.[10] Robison was aware that Thermo King's dealer agreements prohibit a dealer from having any affiliation with "(a) any trucking business; (b) any refrigerated truck or trailer body manufacturer; or (c) any refrigerated truck or trailer leasing company."[11] Tiaval was new to Thermo King at the time and needed to speak with his boss, Ray Pittard, Thermo King President for North America and Europe, to learn more about the OEM policy.[12]

Robison followed up with a May 18, 2016 email to Tiaval saying "Have you been able to connect with Ray on our Doggett deal?"[13] Having discussed the matter with Pittard, Tiaval told Robison on May 19 approval was not likely, but Pittard "did not draw an absolute line in the sand and say no."[14] Robison pressed the matter on May 23 because he felt "the sooner

---

[9]  D.Ex. C-7 at 4. Thermo King understood "impact on the business" as a reference to its OEM policy. D.Ex. B at 104, 338.

[10] Dkt. 87-1 at 4, 31-32.

[11] D.Exs. C-1 and C-2 at 8.

[12] Dkt. 87-1 at 31-32.

[13] D.Ex. C-7 at 4.

[14] D.Ex. C-7 at 3.

4

we address any concerns TK Corp has, the better for all involved."[15] Thermo King confirmed to Kirby on or about May 31, 2016, that Doggett could not qualify as a Thermo King dealer because of its existing Freightliner dealership.[16]

After Thermo King and Kirby informed Doggett of Thermo King's position, Doggett refused to accept it. Doggett sent a letter on June 9, 2016 to Ray Pittard and Dane Tiaval.[17] The letter provides some self-serving general background on Leslie Doggett and his companies, but was not supported by any documentation. The letter also, without citation to any authority or explanation, says that refusing to approve a sale "in situations like this" is contrary to Texas law. The letter was signed only by Leslie Doggett, but was copied to Joe Reniers of Kirby.

Thermo King eventually agreed to a "meet and greet" with Doggett on July 28, 2016 in North Carolina.[18] Doggett presented some additional information at the July 28 meeting,[19] but nothing that changed Thermo King's mind.[20] On August 15, 2016, Kirby told Doggett "we have no choice but to walk away from the sale of the business."[21] On that same day

---

[15]  D.Ex. C-7 at 2.

[16]  D.Ex. B at 178-80; D.Ex. C-7 at 1.

[17]  P.Ex. 8.

[18]  P.Ex. 14.

[19]  P.Ex. 17.

[20]  P.Ex. 16.

[21]  P.Ex. 23.

counsel for Doggett sent a demand letter to Thermo King citing the Dealership Act and threatening to sue if Thermo King did not change its position.[22] Thermo King did not change its position, and this lawsuit ensued.

## Analysis

### A.  Dealership Act Claim

Resolution of this state-law claim requires interpretation of a statute enacted by the Texas legislature in 2011. Due to the Act's recent vintage, the Court has not found nor have the parties cited any Texas appellate court decision applying its provisions. Accordingly, this court must make an "*Erie* guess" and "determine as best [we] can" what the Texas Supreme Court would decide. *Harris County v. MERSCORP Inc.,* 791 F.3d 545, 551 (5th Cir. 2015). The court's analysis is guided by general principles of statutory interpretation and common sense. *See Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex. 2015) (the plain meaning of the text is controlling unless a different meaning is supplied by the statutory definition, is apparent from the context, or doing so would lead to an absurd or nonsensical result).

The overall tenor of the Dealership Act is unmistakable — equipment dealers are granted certain non-negotiable statutory rights in their relationship with suppliers. Section 1 declares that state regulation of the business relationship between independent dealers and equipment suppliers is necessary because it "vitally affect[s] the general economy of this state, the public interest, and the public welfare." Section 1 of Acts 2011, 82nd Leg., ch. 1039 (H.B. 3079). Various subchapters of the Act address different aspects of the supplier-

---

[22]  D.Ex. L.

dealer relationship, including sale or transfer of dealerships, termination of dealership agreements, warranty claims, coerced orders, refusals to purchase, price discrimination, repurchases following cancellation or non-renewal, actions and remedies. In each instance the Act provides substantive protections to the dealer rather than the supplier, and these protections are binding and not subject to waiver. TEX. BUS. & COMM. CODE ANN. § 57.003. This dealer orientation is epitomized by Subchapter I, Actions and Remedies, which authorizes a civil action by a *dealer against the supplier* for damages caused by the supplier's violation of the Act, but not vice versa. *See id.* at § 57.401(a) (emphasis added). Nor is this statutory cause of action the dealer's exclusive remedy — the provisions of the Act "are supplemental to any dealer agreement between the dealer and the supplier that provides the dealer with greater protection." *Id.* at § 57.402.

Doggett claims that Thermo King's refusal to approve Doggett's purchase of the Kirby Dealerships violated § 57.102. In particular, Doggett claims that the basis for Thermo King's denial, *i.e.*, that Doggett's affiliation with another trucking company violated Thermo King's OEM policy, was not a "reasonable requirement consistently imposed by the supplier" in similar dealership transactions. *See* § 57.102(d). Doggett points to two recent transactions in which Thermo King apparently made an exception to its OEM policy.

While Thermo King denies that its OEM policy has been inconsistently applied, its main argument is that a condition precedent to the application of § 57.102 — a written request by the dealer — was never satisfied. The relevant portion of the Dealership Act, § 57.102(b), reads as follows:

> If a supplier has contractual authority to approve or deny a request for the sale or transfer of a dealer's business or an equity ownership interest in the dealer's business, *a dealer may request that the supplier approve or deny a request for the sale or transfer of a dealer's business* or an equity ownership interest in the dealer's business to a proposed buyer or transferee. *The dealer's request must be in writing and must include character references and reasonable financial, personal background, and work history information with respect to the proposed buyer or transferee.*

(Emphasis added). If a dealer does make such a request, the supplier has 60 days to make a decision, and can deny the request only pursuant to reasonable requirements for the prospective transferee that are consistently applied. *Id.* at §§ 57.102(c), (d). Thermo King contends that its dealer, Kirby, never made a qualifying request for approval of the sale, and therefore the "consistently imposed requirements" provision of § 57.102(d) was never triggered.

Doggett makes three arguments in response: (1) Section 57.102(b) allows Doggett, as a dealer and prospective transferee, to make the triggering request to the supplier; (2) Kirby satisfied the dealer request requirement by a series of May 18 emails, supplemented by Doggett's June 9 letter as well as Doggett's presentation on July 28; and/or (3) Doggett satisfied the dealer request requirement as Kirby's agent. As explained below, none of these arguments are persuasive.

### 1. *Request by Proposed Buyer*

This argument founders on the plain language of the Act. Section 57.102(b) plainly negates the possibility that the prospective transferee can make the triggering request for approval. The statute says that "*a dealer may request* that the supplier approve . . . a request

8

for the sale or transfer of a dealer's business . . . to a proposed buyer or transferee." (emphasis added). The syntax of this sentence is a bit unusual, but it is not ambiguous. It describes two requests: [1] "a dealer may request that the supplier approve. . . [2] a request for the sale or transfer of a dealer's business to a proposed buyer." Request #2 could presumably be made by either the selling dealer or the prospective buyer, but that request does not trigger the statutory protection. Only Request #1 can do that, and it can only be made by a dealer, not the prospective buyer. To hold otherwise would effectively rewrite the statute.

Doggett argues that, as the proposed transferee, it nonetheless qualifies as "a dealer" under this section because it operates dealerships with suppliers other than Thermo King, such as Freightliner. This argument does violence to the plain meaning of the Act. Read in context with the first sentence of § 57.102(b), a qualifying request can be made only by the *selling* dealer, that is, the dealer whose supplier has a contractual veto over any proposed sale of the dealership.[23] Because Thermo King is the only supplier whose approval is necessary for the proposed transfer of the Kirby dealerships, Kirby is the only dealer eligible to make a qualifying request. Doggett has no existing relationship with Thermo King, and whatever relationship Doggett may have with other suppliers is immaterial under the Act.[24]

---

[23] "If a supplier has contractual authority to approve or deny a request for the sale or transfer of a dealer's business . . . a dealer may request that the supplier approve or deny a request . . .." TEX. BUS. & COM. CODE ANN. § 57.102(b).

[24] Although Thermo King does not frame its argument as a challenge to standing, the court has serious doubts whether Doggett Company, LLC has standing to bring this action. Section (continued...)

9

## 2. Kirby's May 11-18 Emails

Alternatively, Doggett contends that Kirby satisfied the Act's "notice" requirement by sending the May 18 email chain, later supplemented by Doggett's June 9 letter and Doggett's July 28 meeting with Thermo King. This argument also fails, for several reasons.

First, Doggett's brief signals its weakness by subtly mis-characterizing the statutory scheme. Contrary to Doggett's contention, § 57.102(b) is not a "notice" statute. The term "notice" appears elsewhere in the Act,[25] but not in § 57.102(b). Here, the Legislature employs a different word — *request*. Unlike a mere notice, a "request" is "an instance of asking for something, esp. in a polite or formal manner."[26] While the Kirby emails to Thermo King might accurately (though loosely) be described as providing notice of the proposed transaction, they cannot reasonably be construed as a request by Kirby for Thermo King to approve the transaction.

The initial email, dated May 11 by Kirby VP Jason Robison to Therm King VP Dane Tiaval, merely advised that Kirby had been approached by a "potential buyer," and suggested a meeting to discuss "the potential impact on the business."[27] Tiaval responded with a request

---

[24] (...continued)
57.401 of the Act creates a cause of action for "a dealer" to recover its own damages. Even if Doggett were somehow asserting this claim on behalf of Kirby, Doggett is seeking to redress its own injury, not Kirby's.

[25] *See, e.g.*, §§ 57.052(1), 57.152, 57.155, 57.204.

[26] OXFORD ENGLISH DICTIONARY, available at http://www.oed.com/search?searchType=dictionary&q=request&_searchBtn=Search.

[27] D.Ex. C-7 at 4. Thermo King understood "impact on the business" as a reference to its OEM
(continued...)

for time to discuss the matter with his boss, Thermo King President Ray Pittard. Kirby's next email dated May 18 was a follow-up to Tiaval, inquiring merely "Have you been able to connect with Ray on our Doggett deal?"[28] Neither email, whether considered separately or in tandem, can reasonably be construed as a dealer request invoking the protections of § 57.102(b).

In the first place, the emails do not explicitly invoke the Dealership Act or § 57.102(b). Neither email expressly requests Thermo King to approve or reject anything. In fact, nothing in this record reflects any awareness by Kirby of its § 57.002(b) rights at the time it sent these emails, much less an intent to invoke those rights against Thermo King.

Nor is it reasonable to infer from the circumstances that Kirby was implicitly requesting approval for the transaction. The record evidence shows that Kirby representatives were aware that Thermo King's OEM policy might pose an insuperable obstacle to any potential deal with Doggett. In order to avoid possibly jeopardizing its business relationship with Thermo King, Kirby apparently opted for further discussion as opposed to a formal demand for approval.[29]

Finally, the May 11 and 18 emails plainly do not satisfy the content requirements for a § 57.102 request. The emails do not "include character references and reasonable financial,

---

[27] (...continued)
policy. D.Ex. B at 104, 338.

[28] D.Ex. C-7 at 4.

[29] *See* D.Ex. C-7 at 2 ("the sooner we address any concerns TK Corp has, the better for all involved.").

11

personal background, and work history information with respect to the proposed buyer or transferee." The emails contain no details about the deal, nor do they even attach the letter of intent between Kirby and Doggett.[30]

For these reasons, the court concludes that Kirby's May 11-18 email chain does not constitute a dealer request for approval of the sale of the Kirby dealerships under the Act.

### 3. *Doggett as Kirby's Agent*

Doggett argues that the Kirby emails should be evaluated in combination with Doggett's letter of June 9, 2016 and Doggett's presentation at a July 28 meeting, on the theory that on both occasions Doggett was acting as Kirby's agent. Nothing in the statute expressly allows for an agent of a dealer to request approval of a sale, but assuming for present purposes the legality of such an arrangement, Doggett's claim fails.

Texas law does not presume an agency relationship. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007). The party alleging the agency relationship has the burden of proving it by a preponderance of the evidence. *Id.* Establishment of an agency relationship requires a meeting of the minds and consent of both principal and agent. *Carr v. Hunt*, 651 S.W.2d 875, 879 (Tex. App. -- Dallas 1983, writ ref'd n.r.e.). "An essential element of proof of agency is that the alleged principal has both the right to assign the agent's task and to control the means and details of the process by which the agent will accomplish the task." *Johnson v. Owens*, 629 S.W.2d 873, 875 (Tex. App. 1982, writ ref'd n.r.e).

---

[30] These deficiencies were not cured by supplemental information Doggett provided to Thermo King in June and July of 2016, whether or not Doggett was acting as Kirby's agent. The agency argument is considered below.

The June 9 letter was copied to Kirby, but nothing in the letter indicates Doggett sent the letter on Kirby's behalf or that Kirby endorsed its content.[31] Nor has Doggett offered any extrinsic evidence of any agreement between Kirby and Doggett that the latter was authorized to request approval on behalf of Kirby. Doggett's Chief Financial Officer, Brian McLemore, testified that he spoke with Joe Reniers about sending a letter to get a meeting set up, and Reniers thought it was a good idea.[32] But nothing in the conversation described by McLemore evidences Renier's consent to establish any sort of agency relationship with Doggett for this purpose, nor was any such consent ever communicated to Doggett or Thermo King. Certainly, Kirby was an interested party with respect to Doggett's communications with Thermo King about the proposed deal. But that is a far cry from giving a third party like Doggett free rein to act on Kirby's behalf with respect to an important matter involving Kirby's own supplier.

On this summary judgment record, Doggett has not presented sufficient evidence to raise a fact question regarding an agency relationship with Kirby for purposes of a dealer request under § 57.102(b) of the Act. In light of this finding, there is no need to consider

---

[31] Both sides attempt to inject Kirby's state of mind into the huge void created by Kirby's absence from this litigation. *See* P.Ex. 9 at 168; P.Ex. 23. Doggett objects specifically to Thermo King Exs. C-8 and C-10 as "double hearsay," and to Ex. R as hearsay, and has moved to strike them (Dkts. 68, 79). The motions are denied. However, the court notes that it has not relied on Thermo King exhibits C-8, C-10, or R in this opinion and they are not necessary to its ruling.

[32] P.Ex. 9 at 168.

Kirby's alternative grounds challenging the sufficiency of the dealer request under the Act.

B.     **Texas Anti-Trust Claim**

Doggett asserts that Thermo King has attempted to restrain the market by blocking Doggett's acquisition of the Kirby dealerships in favor of acquisition by its existing North Dallas dealer. The Texas Free Enterprise and Anti-Trust Act grants a right of action to persons "whose business or property has been injured by reason of any conduct declared unlawful in Subsection (a), (b), or (c) of Section 15.05 of this Act." TEX. BUS. & COMM. CODE ANN. § 15.21(a)(1). Doggett contends that Thermo King has attempted to create a monopoly in violation of 15.05(b).[33]

A claim for attempted monopolization in violation of § 15.05(b) requires proof that Thermo King engaged in predatory or anticompetitive conduct with specific intent to monopolize, and by its conduct had a dangerous probability of achieving a monopoly. *Texas Dis. Sys. Landfill, Inc. v. Waste Manag. Holdings, Inc.*, 219 S.W.3d 563, 591 (Tex. App. -- Austin, 2007, pet. denied) (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)). In determining if there is an actual danger of monopoly, the court must "consider the relevant product and geographic market and the defendant's economic power in that market." *Id.* at 592. Here, Thermo King's footprint in the market will remain the same

---

[33] Neither the second amended complaint nor Doggett's summary judgment briefing expressly specifies whether it is claiming a violation of § 15.05 (a), (b), or (c). Doggett's argument indicates its claim is based on § 15.05(b). There is no allegation of concerted action by two or more persons as needed to show a violation of § 15.05(a), and there is no allegation that Thermo King has attempted to "sell, lease, or contract for the sale or lease of any goods," as required by § 15.05(c).

14

whether Kirby, Doggett, or another company runs the dealerships. Doggett cannot show that selling the Kirby dealerships to the existing North Dallas dealer, assuming Doggett could show that was Thermo King's intent, would destroy competition for the products Thermo King manufactures. The fact that Doggett would lose the opportunity to profit from the dealership is not an injury to the competitive market.

In support of its claim, Doggett has presented the expert report of Scott A. Bayley. Bayley opines "Thermo King has attempted to create a situation in which Convoy [the North Dallas dealer] would be the exclusive Thermo King dealer for all of North, East, Central, and South Texas and would have the ability to increase prices on Thermo King products and services without any threat of intra-brand competition."[34] Thermo King is not obligated to facilitate "intra-brand competition" — a manufacturer's monopoly over distribution of its own products is not illegal. *Transource Int'l v. Trinity Indus.*, 725 F.2d 274, 283 (5th Cir. 1984).

Doggett cites *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1224 (10th Cir. 1986), for the proposition that *Transource* is not an absolute bar to its claim. *Westman* does not save Doggett's case. The fact that there are cases in which a supplier's refusal to

---

[34] P.Ex. 39 at 15. Thermo King has filed a *Daubert* motion to exclude the testimony of Scott A. Bayley (Dkt. 94). The motion to exclude Bayley's testimony regarding Doggett's lost profit damages is denied as moot in light of the court's rulings. Given the conclusory nature of Bayley's anti-trust injury opinions and the lack of analysis and factual support for them in the record (*see* Dkt. 94 at 3-4; Dkt. 96-1 at 10, 33-34), this testimony likely fails to meet the standards of Federal Rule of Evidence 702. Nonetheless, the court has considered the testimony and finds it insufficient to defeat summary judgment given the legal authority of *Transource Int'l*.

deal with a potential distributor is an anti-trust violation does not make this one of them. Here, as in *Westman*, "the record reveals not the slightest hint of price maintenance or price fixing." As stated in *Westman*, "a manufacturer generally should have wide latitude in determining the profile of its distributorships." *Id.* at 1225.

Doggett further attempts to dodge *Transource* by arguing that Thermo King has attempted to monopolize the service, not just the sale, of its products. Doggett has cited no authority supporting a legal anti-trust distinction between distribution of products versus services.[35] Moreover, Doggett's position is unsupported by evidence of the alleged market injury. The record contains no evidence that users of Thermo King's products are obligated to use a Thermo King dealer for service. In addition, there is no evidence to support Bayley's assumption that "prices on most products and services are set by the individual dealer."[36] Thermo King is entitled to summary judgment on Doggett's state law anti-trust claim.

**C.     Remaining Claims**

Doggett has also asserted claims against Thermo King for declaratory judgment; tortious interference with business relations; and for injunctive relief. Each of these claims fails because Doggett cannot prove that Thermo King's actions violated the Dealership Act or were otherwise unlawful or tortious.

***Declaratory judgment.***   Doggett seeks declarations that (1) the sale to Doggett is approved; (2) Thermo King's reasons for denying approval are invalid; and (3) the Act

---

[35]    *See* Dkt. 81 at 43.

[36]    P.Ex. 39 at 15.

applies to the transaction at issue. Such declarations are precluded by the court's ruling on Doggett's direct claim for violation of the Act.

*Tortious interference.* The elements of a claim for tortious interference with prospective business relations are: (1) a reasonable probability of entering the prospective relationship absent the interference; (2) intent to interfere with the prospective relationship or knowledge that its actions would interfere; (3) conduct that is independently tortious or unlawful; (4) the interference proximately caused injury; and (5) actual damages. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001); *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). In light of the court's previous rulings, Doggett cannot meet its burden on element 3, at least.

*Injunctive relief.* Doggett seeks to permanently enjoin Thermo King from (1) objecting to or in any other way preventing Doggett's acquisition of the Kirby Dealerships; (2) approving any other sale of the Kirby Dealerships;[37] and (3) further violation of the Dealership Act and Texas Antitrust Act or interference with Doggett's business relationships. In light of the rulings above, Doggett is not entitled to injunctive relief.

**Conclusion and Order**

For the reasons discussed above, Thermo King's motion for summary judgment (Dkt. 50) is granted and Doggett's motion for summary judgment (Dkt. 66) is denied. The court will issue a separate final judgment.

---

[37] Thermo King voluntarily stipulated not to approve any other sale during the pendency of this case, mooting the request for a preliminary injunction. Dkt. 31.

Signed at Houston, Texas on August 1, 2017.

_Stephen Wm Smith_
Stephen Wm Smith
United States Magistrate Judge